**Case No. 12-2017**

_____

IN THE

## UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

_____

**ROBERT D. MORT RANTA**

*Debtor-Appellant*

**v.**

**THOMAS P. GORMAN**

*Trustee-Appellee*

_____

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**
Hon. Claude Hilton, U.S. District Judge

_____

**BRIEF OF APPELLANT**

**Daniel M. Press**
**CHUNG & PRESS, P.C.**
**6718 Whittier Ave., Suite 200**
**McLean, Virginia 22101**
**(703) 734-3800**
**(703) 734-0590**
**dpress@chung-press.com**
*Counsel for Appellant*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. _____    Caption: _____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_____
(name of party/amicus)

_____

who is _____, makes the following disclosure:
    (appellant/appellee/amicus)


1.    Is party/amicus a publicly held corporation or other publicly held entity?    YES    NO


2.    Does party/amicus have any parent corporations?    YES    NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:




3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    YES    NO
      If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?          YES      NO
If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)      YES      NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?                          YES      NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: _____          Date: _____

Counsel for: _____

## CERTIFICATE OF SERVICE
**************************

I certify that on _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_____          _____
          (signature)                                          (date)

07/19/2012                              - 2 -
SCC                                      ii

# TABLE OF CONTENTS

Disclosure of Corporate Affiliations and Other Interests ............................... i

Table of Contents ........................................................................................ iii

Table of Authorities .................................................................................... iv

Statement of the Basis of Appellate Jurisdiction ........................................... 1

Issues Presented ........................................................................................... 2

Statement of the Case .................................................................................. 2

Statement of Facts ....................................................................................... 3

Summary of Argument ................................................................................ 5

ARGUMENT ............................................................................................... 6

Standard of Review ...................................................................................... 6

SOCIAL SECURITY BENEFITS MAY NOT BE INCLUDED
IN THE CALCULATION OF DISPOSABLE MONTHLY INCOME ........ 7

Congress Has Reiterated the Protected Nature of Social Security
Income in Bankruptcy ................................................................................. 7

*The Bankruptcy Code* .................................................................................. 8

*The Social Security Act* .............................................................................. 12

THE PLAN IS FEASIBLE ......................................................................... 17

Conclusion ................................................................................................. 19

<u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*In re Alexander*, 344 B.R. 742, 751 (Bankr. E.D.N.C. 2006) ................ 17-18

*In re Armstrong World Indus., Inc.,* 432 F.3d 507 (3d Cir.2005) ................ 1

*In re Barfknecht*, 378 B.R. 154 (Bankr. W.D. Tex. 2010) ........................... 9

*Bartee v. Tara Colony Homeowners Ass'n (In re Bartee),*
212 F.3d 277 (5th Cir.2000) .......................................................... 1

*Baud v. Carroll*, 634 F.3d 327 (6th Cir. 2011) .............................................. 9

*In re Buren*, 725 F.2d 1080 (6th Cir. 1984) ................................................. 15

*In re Carpenter*, 614 F.3d 930 (8th Cir. 2010) ........................................... 15

*In re Cranmer*, 433 B.R. 391 (Bankr. D. Utah 2010) .................................. 11

*Cranmer v. Anderson*, 463 B.R. 548 (D. Utah 2011) ............................. 11-12

*Deans v. O'Donnell*, 692 F.2d 968 (4th Cir. 1982) ....................................... 1

*In re Edmunds*, 350 B.R. 636 (Bankr. D.S.C. 2006) ................................... 10

*Hamilton v. Lanning*,  __ U.S. __, 130 S.Ct. 2464 (2010) ...................... 8, 10

*Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,*
530 U.S. 1 (2000) ......................................................................... 7

*In re Herrmann*, 2011 WL 576753, C/A No. 10-06523-JW
(Bankr. D.S.C. Feb. 9, 2011) ................................................... 10-11

*In re Kibbe¸* 361 B.R. 302 (1st Cir. BAP 2007) ....................................... 9, 17

*Lamie v. U.S. Trustee,* 540 U.S. 526, 124 S.Ct. 1023 (2004)........................ 7

*Mains v. Foley*, 2012 WL 612006 (W.D. Mich. Feb. 24, 2012) .................. 11

*McDow v. Dudley,* 662 F.3d 284 (4th Cir. 2011) ............................................ 1

*In re Miller,* 445 B.R. 504 (Bankr. D.S.C. 2011) .................................... 10, 15

*In re Nicholas*, 458 B.R. 516 (Bankr. E.D. Ark. 2011) ........................... 11-12

*Philpott v. Essex County Welfare Board*, 409 U.S. 413 (1973) ................... 14

*Public Citizen v. Dept of Justice,* 491 U.S. 440, 109 S. Ct. 2558, 105
L.Ed.2d. 377 (1989) ..................................................................................... 7

*Radlax Gateway Hotel LLC v. Amalgamated Bank*, No. 11-166,
slip op. at 10 (U.S. May 29, 2012) ............................................................. 17

*In re Schanuth,* 342 B.R. 601 (Bankr.W.D.Mo.2006) ............................ 17-18

*In re Spradlin,* 231 B.R. 254 (Bankr. E.D. Mich. 1999) ............................... 7

*In re Vandenbosch*, 459 B.R. 140 (M.D. Fla. 2012) .................................... 10

*Washington State Department of Social and Health Services v.*
*Guardianship Estate of Keffeler*, 537 U.S. 371  (2003) .............................. 13

*In re Welsh*, 465 B.R. 843 (9th Cir. BAP 2012) ............................................ 9

*In re Wise*, __ B.R. ___, No. 12-262 (Bankr. D.D.C. August 16, 2012) ...... 10

## Statutes

11 U.S.C. § 101(10A) ............................................................................ *passim*

11 U.S.C. § 522 ..................................................................................... 10, 16

11 U.S.C. § 541 ............................................................................................ 16

11 U.S.C. § 707(b) ......................................................................................... 8

11 U.S.C. §1325(b)(1)(B) ................................................................. 4

11 U.S.C. § 1325(b)(2) ........................................................... *passim*

11 U.S.C. § 1325(b)(3) ................................................................. 9

11 U.S.C. § 1325(b)(4) ................................................................. 4

28 U.S.C. § 157 ............................................................................ 1

28 U.S.C. § 158 ............................................................................ 1

28 U.S.C. § 1291 .......................................................................... 1

28 U.S.C. §§ 1334 ........................................................................ 1

42 U.S.C. § 407(a) ............................................................... 6, 11-16

Other Authorities

Social Security Amendments of 1983, House Conference Report
No. 98-47 Joint Explanatory Statement of the Committee of
Conference p. 153, reprinted in 2 1983 U.S. Code Congressional and
Administrative News 98th Cong. First Session p. 443 ................................ 14

4 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy*
¶ 522.09[10][a] n.76 (16th ed. 2011) ........................................... 15

<u>Statement of the Basis of Appellate Jurisdiction</u>

This is an appeal from a final order of the District Court [JA 89] affirming the Bankruptcy Court's Order denying confirmation of the Debtor's Chapter 13 Plan [JA 59]. The Bankruptcy Court Order was entered on March 20, 2012, and the Notice of Appeal to the District Court was timely filed on April 2, 2012 [JA 60]. The District Court affirmed by Order entered by Order dated August 6, 2012 [JA 89] and entered on the docket on August 7, 2012 [JA 2]. The Notice of Appeal to this Court was timely filed on August 19, 2012.

The Bankruptcy Court had jurisdiction under 28 U.S.C. §§ 1334(a) and 157(b)(1). Confirmation of a plan was a core proceeding over which the Bankruptcy Court had jurisdiction under 28 U.S.C. § 157(b)(2)(L). The District Court had jurisdiction over the appeal pursuant to 28 U.S.C. § 158(a)(1) and/or (3). This Court has jurisdiction over this appeal pursuant to 28 U.S.C. §§ 158(d)(1) and 1291. The appeal is from a final order or judgment affirming the order of the Bankruptcy Court denying confirmation of Debtor's Chapter 13 plan, which is a final order for purposes of appeal. *In re Armstrong World Indus., Inc.,* 432 F.3d 507 (3d Cir.2005); *Bartee v. Tara Colony Homeowners Ass'n (In re Bartee),* 212 F.3d 277 (5th Cir.2000). *See also Deans v. O'Donnell*, 692 F.2d 968 (4th Cir. 1982) (treating denial of confirmation as a final appealable order); *McDow v. Dudley,* 662 F.3d 284 (4th Cir. 2011) (denial of motion to dismiss a bankruptcy

case is final and appealable; "orders in bankruptcy cases may be immediately appealed if they finally dispose of discrete disputes within the larger case").

Issues Presented

The question presented on appeal is whether, for a below-median income Chapter 13 Debtor, the Debtor may properly exclude social security benefits from the calculation of current monthly income and thus disposable monthly income for purposes of confirmation of a Chapter 13 Plan.

Statement of the Case

The Debtor, Robert D. Mort Ranta, filed a voluntary petition under Chapter 13 of the U.S. Bankruptcy Code on December 12, 2011 [JA 10], and after an extension of time was granted, timely filed his Schedules [JA 22] and Chapter 13 Plan [JA 49] on January 16, 2012.   The Trustee objected to confirmation [JA 56] on the grounds that Debtor did not include his social security benefits in his calculation of disposable income.

At the hearing, the Bankruptcy Court found that despite the exclusion of social security from the definition of "current monthly income" ("CMI") in 11 U.S.C. § 101(10A), and the use of CMI as the starting point for determining disposable income in § 1325(b)(2), social security should not be excluded from the calculation of disposable income [JA 86].  Thus the Court denied confirmation.

[JA 59].

An appeal to the District Court followed.  [JA 60].  While Debtor filed a Motion for Leave to Appeal [JA 63] in case the matter were considered interlocutory, the District Court treated the matter as a final order, entered a briefing schedule as a docket entry [JA 2], and after briefing (and without oral argument) entered an Order affirming the Bankruptcy Court's Order. [JA 89].  This appeal followed [JA 91].

Statement of Facts

Robert D. Mort Ranta,[1] the Debtor, is 66 years old, and although he was working, he also receives social security benefits.  His wife, also employed, receives social security benefits for herself and their minor daughter. Schedule I showed that the total household income of the Debtor and his spouse, net of payroll deductions, was $7492.10, including $3319 in social security benefits for the Debtor and his wife and minor daughter [JA 34].  The Debtor's monthly expenses on Schedule J were scheduled as $6967.24, leaving $524.86 in disposable income with which a plan could be funded [JA 35].  Debtor's plan proposed to pay $525 per month for 60 months (for total funding of $31,500) [JA 49], although because

---

[1] Many of the papers in this case refer to the Debtor as "Mr. Ranta," but his surname is "Mort Ranta."

his household income is below the statewide median, under 11 U.S.C. § 1325(b)(4), he was only required to dedicate 36 months of projected disposable income to his plan [JA 42].

After requesting certain documentation, the Trustee filed an objection to confirmation stating:

> **Violation of 11 U.S.C. §1325(b)(1)(B) and §521(3)** - Failure to submit disposable income to the payment of creditors under this Chapter 13 Plan and failure to cooperate with the Office of the Chapter 13 Trustee.
>
> • Trustee requested the following documents from Debtor at the January 24, 2012 creditor's meeting and again on January 28, 2012 in an e-mail to Debtor's counsel, in order to verify Debtor's Schedule I and J figures (Debtor is below median). No documents have not been provided in response to Trustee's request. Specifically, Trustee needs the following to evaluate Debtor's Plan:
>
> 2011 W-2 for Mrs. Ranta.
> Last six months bank and credit card statements.
> Last two (2) quarterly (or six (6) months monthly) statements for the insurance claimed at item 4(b) of Schedule I, and 11 of Schedule J. Debtor's testimony at the creditor's meeting raised questions as to whether correct numbers were used, and whether the premiums were quarterly or monthly.
> Backup documents to support the following expenses listed on Schedule J:
> Electricity - $225.00/month
> Water and Sewer - $50.00/month
> Telephone - $100.00/month
> Cable/Internet/Phone - $352.00/month
> Clothing - $200.00/month
> Uninsured Medical and dental expenses - $145.00/month
> Transportion - $500.00/month

Health insurance - $363.00/month
Auto insurance - $75.00/month
Personal property taxes - $20.00/month
HELOC - $165.00/month
Personal care - $100.00/month
Wife's debt - $500.00/month
School expenses - $100.00/month

[JA 56].

The documentation was timely provided prior to the confirmation hearing on March 14, 2012.

At the hearing, Debtor pointed out that of the $7492.10 in Schedule I income, $3319 comes from social security for himself ($1847) and his wife and minor daughter ($1472).  [JA 77-78]. With the social security excluded, even with any adjustment of expenses, the parties agreed that Debtor's disposable income would be negative, and that there would be no minimum income-based plan funding requirement.  [JA 75:11-22, JA 76:8-11].

Summary of Argument

Section 101(10A) of the Bankruptcy Code (11 U.S.C.) defines "current monthly income" as excluding "benefits received under the Social Security Act." Section 1325(b)(2), which provides that projected disposable income must be paid under a Chapter 13 Plan, defines "disposable income" by using "current monthly income" as the starting point from which necessary expenses are deducted.

5

Accordingly, social security benefits are not included in calculating projected disposable income.  Further, the Social Security Act contains both a general prohibition against subjecting Social Security benefits to any "legal process" as well as a specific directive removing the benefits from the operation of any bankruptcy or insolvency law. 42 U.S.C. § 407(a).  Accordingly, social security benefits must not be counted in calculating disposable income required to be paid under a Chapter 13 Plan.

## ARGUMENT

### Standard of Review

As this appeal involves a pure question of law, this Court's review is *de novo.*

## SOCIAL SECURITY BENEFITS MAY NOT BE INCLUDED IN THE CALCULATION OF DISPOSABLE MONTHLY INCOME

Since the 1930s, benefits under the Social Security Act have been protected from seizure by the beneficiary's creditors, a position  most recently reinforced by the express exclusion of Social Security benefits from the calculation of projected disposable income, written into the Bankruptcy Code in 2005.  This appeal addresses the question of whether a bankruptcy court may order debtors to pay

their protected Social Security benefits to creditors as a condition to confirmation of a chapter 13 plan. The answer is no.

The starting point for the court's inquiry should be the statutory language. *See Lamie v. U.S. Trustee,* 540 U.S. 526, 534, 124 S.Ct. 1023, 1030 (2004). It is well established that when a "statute's language is plain, the sole function of the court, at least where the disposition required by the text is not absurd, is to enforce it according to its terms." *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,* 530 U.S. 1, 6 (2000) (internal quotations omitted). A result will be deemed absurd only if it is unthinkable, bizarre or demonstrably at odds with the intentions of its drafters. *See In re Spradlin,* 231 B.R. 254, 260 (Bankr. E.D. Mich. 1999) (citing *Public Citizen v. Dept of Justice,* 491 U.S. 440, 109 S. Ct. 2558, 105 L.Ed.2d. 377 (1989)).

**Congress Has Reiterated the Protected Nature of Social Security Income in Bankruptcy**

Congress recognized the protected status of Social Security benefits in bankruptcy in several distinct enactments. These enactments appear in both the Social Security Act and in the Bankruptcy Code.

***The Bankruptcy Code***

Section 101(10A) of the Bankruptcy Code (11 U.S.C.) defines "current monthly income" as:

> (A) . . . the average monthly income from all sources that the debtor receives . .. without regard to whether such income is taxable income, derived during the 6-month period ending on —
> (I) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii) . . . and
> (B) includes any amount paid by any entity other than the debtor . . . on a regular basis for the household expenses of the debtor or the debtor's dependents . . . ***but excludes benefits received under the Social Security Act.***

§ 101(10A) (emphasis added). Section 1325(b), which provides that projected disposable income must be paid under a Chapter 13 Plan,[2] goes on to define "disposable income" by using "current monthly income" as the starting point:

> For purposes of this subsection, the term "disposable income" means ***current monthly income*** received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended —
> (A)(i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and

---

[2] Projected disposable income is disposable income, as defined, unless "significant changes in a debtor's financial circumstances are known or virtually certain." *Hamilton v. Lanning*, __ U.S. __, 130 S.Ct. 2464 (2010). No such change was at issue in this case, so the terms here have the same meaning.

(ii) for charitable contributions . . . in an amount not to exceed 15 percent of gross income of the debtor for the year in which the contributions are made.

§ 1325(b)(2) (emphasis added).   The trustee's objection, and the Bankruptcy and District Courts' rulings, ignored this explicit exclusion.[3]   Section 1325(b)(2) requires that current monthly income is the starting point for to both above- and below-median debtors.

While the Fourth Circuit has not had occasion to consider this issue, the case law overwhelmingly supports this view.   *See, e.g., In re Kibbe¸* 361 B.R. 302, 312 (1st Cir. BAP 2007) (income exclusions such as social security are not to be included in projected disposable income for below median debtors); *Baud v. Carroll*, 634 F.3d 327, 331 (6th Cir. 2011) ("the calculation of a debtor's projected disposable income: (a) must not include items—such as benefits received under the Social Security Act—that are excluded from the definition of currently monthly income set forth in § 101(10A)"); *In re Barfknecht*, 378 B.R. 154, 162 (Bankr. W.D. Tex. 2010) (social security excluded in calculating disposable income for below-median debtors); *In re Welsh*, 465 B.R. 843, 855-56 (9th Cir. BAP 2012) (social security benefits specifically excluded, and not bad faith not to include

_____

[3] This is likely based on confusion about the effect of § 1325(b)(3), which, for over-median debtors, uses the "means test" expense standards in § 707(b)(2) to calculate the *expense* side of the equation.

them); *In re Wise*, __ B.R. ___, No. 12-262 (Bankr. D.D.C. August 16, 2012) ("'projected disposable income' never includes social security income"). *In re Vandenbosch*, 459 B.R. 140, 143-44 (M.D. Fla. 2012). "[B]ased on the plain language of section 101(10A) and section 522(d)(10)(A), it was Congress's intent to exclude all Social Security benefits from the calculation of current monthly income, regardless of whether those benefits are personal to the debtor. ... Because all Social Security income is excluded from current monthly income, it follows that it must be excluded from disposable income as well." *In re Miller,* 445 B.R. 504, 507 (Bankr. D.S.C. 2011).

Most of the cases cited by the Trustee below do not even address the exclusion of Social Security from the disposable income calculation. *In re Edmunds*, 350 B.R. 636 (Bankr. D.S.C. 2006) does not mention social security, and simply addresses the whether the means test for above-median debtors is forward-looking or backward-looking, as resolved later by the Supreme Court in *Hamilton v. Lanning*, __ U.S. __, 130 S.Ct. 2464 (2010). And *In re Herrmann*, 2011 WL 576753, C/A No. 10-06523-JW (Bankr. D.S.C. Feb. 9, 2011) relates to an above-median debtor, and holds only that "the issue is not whether Mr. Herrmann can be forced to use his social security income to pay his pre-petition debts, but rather whether Congress intended to protect a joint debtor's social security from being to

10

be [sic] used to pay his own normal and customary living expenses. This Court does not believe that was Congress's purpose or intent. In this case, Debtors' joint living expenses should be allocated fairly between them and Mrs. Herrmann should not be allowed to absorb more than her fair share of the expenses at the expense of her creditors. If done in this case, Mrs. Herrmann will have more income available to pay her creditors." *Herrmann* was decided on good faith grounds, and resulted in denial of confirmation because the husband's non-social security benefits were being applied to pay the wife's expenses, allowing the wife to retain her social security.  Here there are no such issues; both spouses work, and both spouses receive social security, so there is no issue of improper allocation or bad faith as in *Herrmann*.  Even *Mains v. Foley*, 2012 WL 612006 (W.D. Mich. Feb. 24, 2012) held that the court may not consider social security benefits in calculating the objective disposable income test in § 1325(b).[4]

The Trustee's brief below only cited two cases that hold that social security benefits must be included in projected disposable income: *In re Nicholas*, 458 B.R. 516, 520 (Bankr. E.D. Ark. 2011), and *In re Cranmer*, 433 B.R. 391, 399 (Bankr. D. Utah 2010).  *Cranmer* was not directly cited by the trustee, but only as having

---

[4] In *Mains* the Court found a lack of good faith.  Here, the trustee did not object to confirmation on good faith grounds, so there should be no question of the Debtor's good faith.

been cited in *Nicholas*, perhaps because it was in fact reversed by *Cranmer v. Anderson*, 463 B.R. 548 (D. Utah 2011). So *Nicholas* stands alone in its holding, and in having based its holding on a case reversed on appeal. Every other case to consider the issue holds that social security benefits are excluded from calculating projected disposable income.

***The Social Security Act.***

If the Bankruptcy Code were not clear enough, the Social Security Act confirms that Congress expressly intended to protect social security benefits from having to be paid to creditors in Chapter 13. The Social Security Act's basic provision protecting benefits from creditors is currently found in subsection (a) of 42 U.S.C. § 407. This subsection contains both a general prohibition against subjecting Social Security benefits to any "legal process" as well as a specific directive removing the benefits from the reach of all bankruptcy laws. The statute provides:

> The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, ***or to the operation of any bankruptcy or insolvency law***.

42 U.S.C. § 407(a) (emphasis added). The Supreme Court has had occasion to interpret the term "other legal process" found in § 407(a). According to the Court,

"other legal process" in § 407(a) refers not only to formal execution measures, but also to other processes that "seem to require the utilization of some judicial or quasi-judicial mechanism, though not necessarily an elaborate one, by which control over property passes from one person to another in order to discharge or secure discharge of an allegedly existing or anticipated liability." *Washington State Department of Social and Health Services v. Guardianship Estate of Keffeler*, 537 U.S. 371, 385 (2003).

Two common occurrences in any chapter 13 bankruptcy case would violate § 407(a) if they had an impact on Social Security benefits. First, the filing of a bankruptcy case transfers the debtor's interest in many forms of property from the debtor to the bankruptcy estate. Treating the filing of a bankruptcy case as transferring the debtor's property interest in Social Security benefits from the debtor to the bankruptcy estate would be a transfer of control over the funds from the beneficiary to another entity in contravention of § 407(a). Second, a bankruptcy court's order related to approval of a chapter 13 plan may direct portions of the debtor's income to be paid to a trustee. The trustee in turn pays these funds toward the discharge of pre-bankruptcy debts. A bankruptcy court order having the effect of making a debtor contribute Social Security income toward payment of pre-

petition debts under a chapter 13 plan would violate § 407(a).[5]  The final phrase of

§ 407(a) gives the broadest and strongest possible protection to Social Security

benefits in the context of bankruptcy. This language mandates that Social Security

benefits not be subject to the operation of *any* bankruptcy law.

Finding that certain bankruptcy courts had been lax in enforcing the

protections of § 407,[6] Congress in 1983 amended the Social Security Act to make

---

[5] The voluntary nature of the initial bankruptcy petition filing cannot be construed
as a waiver of § 407(a)'s protections. The Supreme Court held long ago that
beneficiaries who voluntarily signed up for state-sponsored welfare programs
could not be treated as having agreed to a waiver of their rights under § 407(a) by
seeking these benefits. *Philpott v. Essex County Welfare Board*, 409 U.S. 413
(1973) (requirement to reimburse state for welfare benefits out of Social Security
income violated § 407(a)).

[6] The relevant House Conference Report stated as follows:
Since 1935, the Social Security Act has prohibited the transfer or assignment of
any future social security or SSI benefits payable and further states that no money
payable or rights existing under the Act shall be subject to execution, levy,
attachment, garnishment, or other legal process, or to the operation of any
bankruptcy or insolvency law.  Based on the legislative history of the Bankruptcy
Reform Act of 1978, some bankruptcy courts have considered social security and
SSI benefits listed by the debtor to be income for purposes of a Chapter XIII
bankruptcy and have ordered SSA in several hundred cases to send all or a part of a
debtor's benefit check to the trustee in bankruptcy.   As a correction to
misinterpretation of existing law, the Conference Committee adopts the House
language of proposed Social Security legislation. This bill "[s]pecifically provides
that social security and SSI benefits may not be assigned notwithstanding any other
provision of law, including P.L. 95-598, the "Bankruptcy Reform Act of 1978".
Social Security Amendments of 1983, House Conference Report No. 98-47 Joint
Explanatory Statement of the Committee of Conference p. 153, reprinted in 2 1983
U.S. Code Congressional and Administrative News 98th Cong. First Session p.
443.

the protections for Social Security benefits in the bankruptcy process as unambiguous as possible. Congress re-codified § 407 and added a new subsection 407(b) which provides:

> (b) No other provision of law, enacted before, on, or after the date of the enactment of this section, may be construed to limit, supersede, or otherwise modify the provisions of this section except to the extent that it does so by express reference to this section. 42 U.S.C. § 407(b).

The courts have construed § 407 to exclude Social Security benefits from property of the bankruptcy estate in chapter 7 and in chapter 13 cases. Social Security benefits therefore have a status distinct from that of exempt property. Exclusion of the benefits from the bankruptcy estate precludes any attempt by the bankruptcy court or trustee to exercise control over Social Security income. *In re Carpenter*, 614 F.3d 930, 936 (8th Cir. 2010) (construing applicability of § 407 in chapter 7: "We conclude § 407 must be read as an exclusion provision, which automatically and completely excludes social security proceeds from the bankruptcy estate, and not as an exemption provision which must be claimed by the debtor."); *In re Buren*, 725 F.2d 1080, 1085-87 (6th Cir. 1984); *In re Miller*, 445 B.R. 504, 507 (Bankr. D.S.C. 2011) ("the language of section 407(a) of the Social Security Act unambiguously prevents a debtor from being forced to use

Social Security income to fund his chapter 13 plan."). *See also* 4 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 522.09[10][a] n.76 (16th ed. 2011).

While the Trustee in his brief below and the Bankruptcy Court in its oral ruling made policy arguments,  nowhere do they address the clear and unambiguous language of the applicable code sections, 42 U.S.C. § 407, and 11 U.S.C. §§ 101(10A) and 1325(b)(2), which clearly exclude social security benefits from the operation of any bankruptcy law, and exclude them from the definition of "current monthly income" and thus disposable income.   The words "actual ability to repay his creditors" appear only in the trustee's brief, not in the bankruptcy code. The code is replete with situations where there is an actual ability to repay, in particular where there are assets exempted under  § 522 or excluded from the estate under § 541, as well as here where certain income is excluded.  This was a decision Congress made, and it is not for the courts to second-guess these decisions on policy grounds.

The trustee argued below that since Schedule I requires *disclosure* of social security benefits, they must be included in determining disposable income.  This is wrong.  First, an official form cannot trump the Code, and second, the fact that a form requires disclosure (for example, as here, to show that a plan is in fact feasible) does not change the fact that the benefits are not included in current monthly income, and thus disposable income.

16

Finally, the Trustee argued that pre-BAPCPA practice of including social security should be followed, but there was an unambiguous change in the law in 2005. "As for pre-Code practices, they can be relevant to the interpretation of an ambiguous text, but we find no textual ambiguity here." *Radlax Gateway Hotel LLC v. Amalgamated Bank*, No. 11-166, slip op. at 10 (U.S. May 29, 2012).

Both the Bankruptcy Code and the Social Security Act are clear and unambiguous in excluding social security benefits from inclusion in disposable income that must be paid to creditors. Accordingly, the Bankruptcy Court erred in concluding that social security must be dedicated to the plan for below-median income debtors.

## THE PLAN IS FEASIBLE

There is no question that the plan in this case is *in fact* feasible. The trustee maintains that the Debtors have *extra* income, not too little to fund the plan. But the Trustee and the courts below took the position that if social security is excluded from projected disposable income, it must also be excluded from the feasibility analysis. This is incorrect.

As the First Circuit BAP held in *Kibbe*, the "definition of 'projected disposable income' does not preclude a debtor's use of available monies excluded from the definition (e.g., the Income Exclusions [i.e., social security]) "to support the feasibility of the debtor's plan." 361 B.R. at 314 n.11. As stated in *In re*

*Alexander*, 344 B.R. 742, 751 (Bankr. E.D.N.C. 2006), "To veterans of Chapter 13 practice, it runs afoul of basic principles to suggest that a debtor with no disposable income can nonetheless propose a confirmable plan. Yet BACPA permits precisely that." The Court continued in footnote 5: "***Plan feasibility is no longer dictated by the disposable income calculation.*** The court disagrees with the outcome in *Schanuth* where the court determined that the debtors' plan was infeasible because the debtors' plan payments exceeded disposable income as calculated under the new law. *In re Schanuth,* 342 B.R. [601,] 604-06 (Bankr.W.D.Mo.2006). The male debtor received social security benefits that had been excluded from the currently monthly income calculation under § 101(10A)(B). The court said that, in order to propose a feasible plan, the debtors could voluntarily add the social security benefits to their disposable income calculation. *Id.* This view of feasibility appears to be based upon the old definition of disposable income." In fact, *Schanuth* is the only case that questioned feasibility based on the exclusion of social security, and even that case allowed it to be voluntarily contributed (as it is, to a large extent here) to render the plan feasible.

The Debtor *in reality* has the income available to fund the plan. He has voluntarily agreed to pay more than statutorily required. This does not render the plan infeasible.

18

Given the clear statutory language, and the foregoing authorities, is apparent that the lower courts erred in requiring the inclusion of social security benefits in the calculation of projected disposable income.

Conclusion

WHEREFORE the Debtor/Appellant respectfully requests that this honorable Court reverse the Order of the District Court affirming the Bankruptcy Court, and thereby overrule the Trustee's objection to confirmation.

Dated: October 1, 2012.

Respectfully submitted,

/s/ Daniel M. Press
Daniel M. Press, VSB #37123
dpress@chung-press.com
CHUNG & PRESS, P.C.
6718 Whittier Avenue, Suite 200
McLean, Virginia 22101
(703) 734-3800
(703) 734-0590 [facsimile]
Counsel for Debtor/Appellant

<u>CERTIFICATION OF COMPLIANCE WITH TYPE-VOLUME LIMITATION</u>

I hereby certify that the foregoing Brief contains fewer than 4149 words, excluding the parts of the Brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). In preparing this certification, I relied on the word-processing system used to prepare the foregoing Brief.

The foregoing Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it was prepared in a proportionally spaced typeface using Microsoft Word 9.0 in 14-point Times New Roman font.

Dated: October 1, 2012.

 _/s/ Daniel M. Press_____
Daniel M. Press

## CERTIFICATE OF SERVICE

Daniel M. Press, attorney for appellant, certifies that on this 1st day of October, 2012, he caused the foregoing Brief of Appellant to be electronically filed. Copies of same have been served upon the following this same date in the manner listed below:

Patricia S. Connor, Clerk
U.S. Court of Appeals for the Fourth Circuit
1100 East Main Street, Suite 501
Richmond, Virginia 23219-3517
*(8 copies, Via Federal Express)*

Eva Choi, Esq.
Thomas P. Gorman, Chapter 13 Trustee
300 N. Washington Street, #400
Alexandria, VA 22314
*Counsel for Appellee*
*(Via the Court's Electronic Filing System)*

　　　　　　　　　　　　　　　 _/s/ Daniel M. Press_____
　　　　　　　　　　　　　　　 Daniel M. Press
　　　　　　　　　　　　　　　 CHUNG & PRESS, P.C.
　　　　　　　　　　　　　　　 6718 Whittier Ave., Suite 200
　　　　　　　　　　　　　　　 McLean, VA 22101
　　　　　　　　　　　　　　　 (703) 734-3800
　　　　　　　　　　　　　　　 (703) 734-0590 fax
　　　　　　　　　　　　　　　 dpress@chung-press.com
　　　　　　　　　　　　　　　 Counsel for Appellant

21