**Case No.: 12-2017**

_____

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

_____

**ROBERT D. MORT RANTA,**

Appellant,

v.

**THOMAS P. GORMAN,**

Appellee.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA, ALEXANDRIA DIVISION
CASE NO. 1:12-CV-00505-CMH-TCB
THE HONORABLE JUDGE CLAUDE M. HILTON

_____

**BRIEF OF THE APPELLEE, THOMAS P. GORMAN**

_____

Eva Choi (VSB# 81974)
OFFICE OF THE CHAPTER 13 TRUSTEE
300 N. Washington Street, Suite 400
Alexandria, VA 22314
Phone: (703) 836-2226
Fax: (703) 836-8120
E-mail: echoi@chapter13alexva.com

*Counsel for Appellee*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __12-2017__    Caption: __Mort Ranta v. Gorman__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Thomas Patrick Gorman__
(name of party/amicus)

_____

who is _____appellee_____, makes the following disclosure:
        (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?    ☐ YES ☑ NO
       If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO
       If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☑YES ☐NO
    If yes, identify any trustee and the members of any creditors' committee:

    Trustee: Thomas P. Gorman (Appellee)
    300 N. Washington St., Ste. 400
    Alexandria, VA 22314

    Creditors' committee: N/A

Signature: /s/ Eva Choi                          Date:        11/16/12

Counsel for: Appellee

## CERTIFICATE OF SERVICE
*****************************

I certify that on  November 16, 2012  the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Daniel M. Press
Chung & Press, P.C.
6718 Whittier Ave. #200
McLean, VA 22101

/s/ Eva Choi                                             11/16/12
        (signature)                                          (date)

07/19/2012
SCC

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF CONTENTS .................................................................................... iii

TABLE OF AUTHORITIES ...............................................................................v

STATEMENT REGARDING ORAL ARGUMENT .............................................1

STATEMENT OF THE ISSUE .............................................................................1

STATEMENT OF THE CASE ...............................................................................1

STATEMENT OF THE FACTS ............................................................................2

SUMMARY OF THE ARGUMENT ......................................................................7

ARGUMENT .........................................................................................................8

I.    Debtor May Not Circumvent The Feasibility Provision of 11 U.S.C.
§1325(a)(6) Required For Plan Confirmation By Selectively Providing His
Social Security Income For The Court's Consideration ......................................8

II.    Allowing A Debtor To Selectively Provide Social Security Income For
Consideration of Only Certain Elements of 11 U.S.C. §1325 Enables Results
Directly Prohibited By The Bankruptcy Code.....................................................13

III.    Neither The Language Nor The Public Policy Underlying Section 207 Of
The Social Security Act Mandates A Wholesale Exclusion Of Social Security
Benefits From Voluntary Bankruptcy Proceedings............................................15

A.    In Determining A Below-Median Income Debtor's Disposable Income,
Schedules I And J Control, Which Expressly Includes Social Security
Benefits ..............................................................................................................18

B.    Social Security Benefits Are Not Included In Current Monthly Income Calculations So As Not To Prejudice Debtors When Applying The Chapter 7 Or Chapter 13 Means Test Analysis, But Exclusion Of Such Does Not Negate A Debtor's Actual Ability To Repay Creditors ................................................22

CONCLUSION ........................................................................................26

CERTIFICATE OF COMPLIANCE .......................................................27

CERTIFICATE OF SERVICE ................................................................28

# TABLE OF AUTHORITIES

CASES

*Anderson v. Cranmer*, No. 12-4002, 2012 WL 5235365 (10th Cir. Oct. 24, 2012) .9

*Baud v. Carroll*, 634 F.3d 327 (6th Cir. 2011) .......................................................19

*Beaulieu v. Ragos*, No. 11-31046, 2012 WL 5292949 (5th Cir. Oct. 29, 2012) .......9

*Carpenter v. Ries*, 614 F.3d 930 (8th Cir. 2010) .....................................................10

*Hamilton v. Lanning*, 130 S.Ct. 2464 (2010)......................................... 9, 18, 19, 20

*In re Cranmer*, 433 B.R. 391 (Bankr. D. Utah 2010)..............................................21

*In re Edmunds*, 350 B.R. 636 (Bankr. D.S.C. 2006) ...............................................19

*In re Herrmann*, 2011 WL 576753, C/A No. 10-06523-JW (Bankr. D.S.C. Feb. 9, 2011) ...................................................................................................................19

*In re Nicolas*, 458 B.R. 516 (Bankr. E.D. Ark. 2011) ............................... 19, 20, 21

*In re Schanuth*, 342 B.R. 601 (Bankr. W.D. Mo. 2006).................................. 10, 11

*In re Sully*, 223 B.R. 582 (Bankr. M.D. Fla. 1998) ................................................11

*In re Wilkinson*, 99 B.R. 366 (Bankr. N.D. Ohio 1989) ..........................................11

*Mains v. Foley*, 2012 WL 612006 (W.D. Mich. Feb. 24, 2012) .............................16

*Philpott v. Essex County Welfare Board*, 409 U.S. 413 (1973) ..............................15

*Rodriguez v. Perales*, 86 N.Y.2d 361 (1995).........................................................16

*Ryan v. Homecomings Financial Network*, 253 F.3d 778 (4th Cir. 2001) ..............14

*Travelers Casualty & Surety Co. of Am. v. Pacific Gas & Elec. Co.*, 549 U.S. 443

(2007) .................................................................................................................20

**STATUTES**

11 U.S.C. §506 .................................................................................................14

11 U.S.C. §101(10A) ........................................................................................23

11 U.S.C. §1325 ......................................................................... 1, 10, 12, 26

11 U.S.C. §1325(a) ...........................................................................................7, 24

11 U.S.C. §1325(a)(6) ................................................................... 8, 10, 12

11 U.S.C. §1325(b)(1)(B)..............................................................13, 19, 24

11 U.S.C. §1325(b)(3)........................................................................................23

11 U.S.C. §1325(b)(4)........................................................................................23

11 U.S.C. §1328 ..................................................................................................13

11 U.S.C. §707(b) ...............................................................................................23

42 U.S.C. §1383(g) .............................................................................................15

**OTHER AUTHORITIES**

H.R. Rep. No. 95-595 (1977), *reprinted in* 1978 U.S.S.C.A.N. 5963.....................14

Soc. Sec. Admin., *Social Security Understanding the Benefits*, SAA Pub. No. 05-

10024 (2012) .................................................................................... 15, 17

**RULES**

Fed. R. Bankr. P. 9009 ......................................................................................19

## STATEMENT REGARDING ORAL ARGUMENT

Trustee-Appellant respectfully requests oral argument as to all issues relating to this appeal.

## STATEMENT OF THE ISSUE

Whether a below median debtor may compel a bankruptcy court to consider his Social Security income only for debtor-selected elements required for Chapter 13 Plan confirmation under 11 U.S.C. §1325, opening the door to results directly prohibited by the Bankruptcy Code?

## STATEMENT OF THE CASE

The Appellant, Robert D. Mort Ranta ("Debtor"), initiated this Chapter 13 case by filing a voluntary petition on December 12, 2011.  Debtor filed a Chapter 13 Plan on January 16, 2012.  During Debtor's Meeting of Creditors on January 24, 2012, the Appellee-Trustee, Thomas P. Gorman ("Trustee"), questioned several expense items budgeted on Debtor's Schedule J, to which Debtor and his counsel gave contradicting answers.  Accordingly, Trustee requested Debtor to provide documentation to support the expenses claimed on Schedule J.  Trustee objected to Debtor's proposed Plan on February 10, 2012, on the grounds of

1

disposable income and Debtor's failure to provide the requested documents to the Trustee.

During the confirmation hearing before the bankruptcy court on March 14, 2012, the court rejected Debtor's argument that he may selectively allow the court to consider his Social Security income in order to meet all elements required for a Chapter 13 Plan confirmation.  Specifically, the bankruptcy court agreed with the Trustee that the Debtor may not provide his Social Security income only for the purpose of showing that Debtor's proposed Plan is feasible, but then prohibit the court from considering the same when evaluating Debtor's disposable income.

The bankruptcy court entered an Order denying confirmation of Debtor's proposed Plan on March 20, 2012, from which Debtor appealed to the United States District Court for the Eastern District of Virginia on April 2, 2012.  The District Court subsequently affirmed the bankruptcy court's decision in an Order entered August 7, 2012.  Debtor commenced this present appeal on August 21, 2012.

## STATEMENT OF THE FACTS

The Appellant, Robert D. Mort Ranta ("Debtor"), initiated this Chapter 13 case by filing a voluntary petition on December 12, 2011. (R. at 4, 10-21).  Debtor filed a Chapter 13 Plan on January 16, 2012. (R. at 6, 49-55).  Debtor's monthly

2

income falls below the state median income level for a household of three. (R. at 41-48). Debtor's Schedule I and J filed with his Chapter 13 Plan states $7,492.10 in monthly income and $6,967.24 in monthly expenses, respectively, resulting in $524.86 of monthly net income. (R. at 34-35, 53-54).

The proposed Plan listed $664,253.83 in total secured debt, $21,276.00 in total non-priority unsecured debt, and $0.00 in total priority debt. (R. at 49). Debtor's Plan proposed $525.00 in monthly payments for 60 months, with a total Plan funding in the amount of $31,500.00 and a 0.42% distribution to unsecured creditors. (R. at 49-55). From the $31,500.00, the Plan was to pay $20,000.00 in mortgage arrears, $8,295.00 in credit card debt separately classified under Section 4B to be paid at 100% because they were the joint debts of Debtor and his non-filing spouse, and 0.42% of other unsecured debt which amounts to $89.59. (R. at 49-55). Debtor's residence listed on Schedule A has $55,746.17 in equity. (R. at 24).

The Appellee, Thomas P. Gorman, is the Chapter 13 Trustee in this case ("Trustee"). Trustee objected to Debtor's Plan on February 10, 2012 for failure to submit disposable income to the payment of creditors and failure to cooperate with the Office of the Chapter 13 Trustee. (R. at 6, 56-58).

Due to conflicting testimony and statements between Debtor and Debtor's counsel at the meeting of creditors on January 24, 2012, Trustee requested

documents to support the accuracy of the expenses claimed on Debtor's Schedule J. (R. at 35, 54). Trustee was not provided with the necessary supporting documents to enable him to fully evaluate Debtor's proposed Plan by the deadline for his objection to the Plan, thus Trustee based his initial objection on the limited grounds pertaining to Debtor's overstated expenses claimed on his Schedule J. (R. at 56-58). The documents were ultimately provided, and the parties proceeded forward at the March 14, 2012 confirmation hearing on the limited issue of whether Social Security income should be included in Debtor's income analysis, thereby rendering Debtor's other claims to expenses moot. (R. at 6, 75-76).

Trustee argued that since Debtor is below median income, Schedules I and J would be the mechanisms applied in evaluating his projected disposable income. (R. at 76). As such, if Debtor's Schedule J were adjusted downward to eliminate any overstated expense items, it would show monthly net income in the amount of $928.20. (R. at 77). Further, if Debtor were to exclude all his Social Security benefits in his projected disposable income analysis, then Debtor would be left with a disposable income figure that would not be feasible in supporting the amount of the proposed Plan payments and his Plan could not be confirmed. (R. at 76).

On the other hand, while Debtor conceded that some of his expenses stated on Schedule J were overstated, he argued that since $3,319.00 of his income stated

4

on Schedule I is from Social Security benefits, any overstatement of expenses would be negated by the fact that Debtor was not required to provide those Social Security benefits in determining his disposable income. (R. at 75, 77-78). Debtor contended that by hypothetically excluding his Social Security benefits, his disposable income would then be negative under any scenario, even if his claimed expenses were corrected to reflect reality. (R. at 77-76). In discussing the extent of which Social Security benefits should be factored into confirming a Chapter 13 plan, Debtor argued that while Social Security benefits should be excluded from the disposable income calculations, he may still choose to include such benefits for the purposes of determining whether a plan is feasible because in such cases, "Essentially, it's not necessary to meet the other requirements for confirmation..." (R. at 80).

Upon the court's inquiry, Debtor proffered that if some of his expenses were corrected on Schedule J then it would reflect a monthly net income of approximately $1,000.00 a month. (R. at 77). Debtor also affirmed the court's assertion that if Debtor were to pay $1,000.00 a month under his Chapter 13 Plan, then Debtor would be able to repay all of his creditors in full. (R. at 82). Conversely, if Debtor were allowed to dictate his proposed monthly payment of $525.00 a month despite his clear ability to repay his creditors in full, then most of

5

the Plan payments would go to secured creditors and unsecured creditors would receive only 0.42% repayment on their claims. (R. at 83).

The bankruptcy court agreed with Trustee's position that Social Security benefits should be included in determining projected disposable income for below median debtors and a debtor's ability to repay his creditors. (R. at 85-87). The court discussed Congress's intent in enacting the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), and the perception leading up to that legislation that some debtors were abusing the bankruptcy process by not paying what they were fully capable of. (R. at 85-86). As a result, part of what Congress implemented through BAPCPA was utilizing mechanisms that are "intended to make sure people pay for what they can actually afford..." (R. at 86). In this case, the court found that Debtor could afford to make greater payments through his Chapter 13 Plan primarily due to his Social Security income. (R. at 86). However, if Debtor did not wish to include his Social Security benefits on the income side of his projected disposable income analysis, then he could not apply a double standard by factoring in his Social Security benefits when considering the expense side of his projected disposable income analysis. (R. at 86). As a result, Debtor's Plan would not be feasible. (R. at 86). Accordingly, the Court denied confirmation of Debtor's proposed Plan and sustained Trustee's disposable income objections regarding the overstated Schedule J expenses. (R. at 6, 86-87).

6

The bankruptcy court entered an Order denying confirmation of Debtor's proposed Plan on March 20, 2012, from which Debtor appealed to the United States District Court for the Eastern District of Virginia on April 2, 2012. (R. at 6, 59-60). The District Court subsequently affirmed the bankruptcy court's decision in an Order entered August 7, 2012, and upheld the bankruptcy court's finding that "[b]ecause Debtor voluntar[il]y chose not to include Social Security benefits for purposes of income in this particular case...Debtor's proposed Chapter 13 Plan was not feasible." (R. at 2, 89-90). Debtor commenced this present appeal on August 21, 2012. (R. at 2, 91-93).

## SUMMARY OF THE ARGUMENT

Trustee argues that Debtor's Social Security income must be contributed, in addition to Debtor's regular wage income, to Debtor's Chapter 13 Plan payments in order for the Plan to be feasible, and because it constitutes disposable income for a below median debtor.

On the other hand, Debtor believes that he may direct the bankruptcy court to consider his Social Security benefits when evaluating his actual ability to repay his creditors and in determining whether Debtor's proposed Chapter 13 Plan satisfies the feasibility and other provisions under 11 U.S.C. §1325(a) required for

confirmation, but that his Social Security income must be ignored when calculating the actual Plan payment amount Debtor is obligated to pay.

Nothing in the Social Security Act nor the Bankruptcy Code prohibits Debtor from using his Social Security income to fund a voluntary Chapter 13 proceeding. Further, the mere use of Social Security benefits for monthly Plan payments does not grant Debtor immunity from the duties and requirements imposed upon him under the Bankruptcy Code that are meant to apply to all debtors equally. Debtor may not direct the bankruptcy court to only consider his Social Security income for the purposes of supporting Plan feasibility, but then prohibit the court from considering the same when determining the appropriate amount of Debtor's Plan payment. Allowing Debtor to do so would enable any debtor using Social Security income to fund a Chapter 13 Plan to indirectly achieve results that are directly prohibited under the Bankruptcy Code.

## ARGUMENT

**I.  Debtor May Not Circumvent The Feasibility Provision of 11 U.S.C. §1325(a)(6) Required For Plan Confirmation By Selectively Providing His Social Security Income For The Court's Consideration**

The primary purpose of Debtor's Chapter 13 Plan is to cure the $20,000.00 in mortgage arrearages on his residence and to fully repay certain unsecured debts jointly held with his non-debtor spouse so as to protect the equity in their home

8

from the claims of their joint creditors. Debtor's proposed Plan seeks to pay almost nothing to his non-joint unsecured creditors. In order to treat these claims in the prescribed manner, Debtor must supplement his and his spouse's regular employment income with their Social Security benefits to provide sufficient funding for the Plan. Upon Trustee's objections to the inflated amount of certain expenses claimed on Debtor's Schedule J, Debtor argued that Trustee's objections are moot since Debtor's Social Security benefits cannot be included in calculating his disposable income. The bankruptcy court agreed with Trustee that Debtor may not selectively apply his Social Security benefits for the purposes of supporting Plan feasibility but not in determining his disposable income so that Debtor may achieve a desirable Plan payment amount.

Other Circuit Courts have issued opinions regarding Social Security income in Chapter 13 case involving **above-median** debtors. *See Beaulieu v. Ragos*, No. 11-31046, 2012 WL 5292949, at *6 (5th Cir. Oct. 29, 2012) (holding that Social Security income is excluded from the calculation of the debtor's disposable income and that the debtor's negative disposable income was not a "special circumstance" under *Hamilton v. Lanning*, 130 S.Ct. 2464 (2010) that warranted deviation from statutorily defined disposable income figure); *Anderson v. Cranmer*, No. 12-4002, 2012 WL 5235365, at *3 (10th Cir. Oct. 24, 2012) (Social Security income did not need to be included in above-median debtor's disposable income calculation and

9

could not be considered in analysis of whether Chapter 13 Plan was proposed in good faith); *Baud v. Carroll*, 634 F.3d 327 (6th Cir. 2011) (above-median debtors not required to include Social Security benefits in projected disposable income calculation); *Carpenter v. Ries*, 614 F.3d 930 (8th Cir. 2010) (lump-sum Social Security payment received prior to bankruptcy filing was not part of the bankruptcy estate).  However, the present case is expressly distinguishable from *Ragos, Cranmer, and Carroll* in that the Debtor in the present case is a below-median income debtor, and that Debtor is not just arguing that his Social Security income should be excluded in determining his disposable income, but also that such income should be *selectively included* at Debtor's discretion when determining whether his proposed Chapter 13 Plan meets the other elements required for confirmation under 11 U.S.C. §1325, such as the feasibility provisions of 11 U.S.C. §1325(a)(6).[1]

On the contrary, should Debtor wish to exclude his Social Security income from his projected disposable income calculation, then such income must be excluded in its entirety in determining other elements of Plan confirmation under 11 U.S.C. §1325, thus rendering Debtor's proposed Plan unfeasible. *In re Schanuth*, 342 B.R. 601, 605 (Bankr. W.D. Mo. 2006).

---

[1] The Trustee is not seeking to capture any pre-petition Social Security benefits Debtor may have received such as the case in *Carpenter*.

10

The debtors in *Schanuth* were below-median debtors, thus their projected disposable income was determined by the income and expenses listed on their Schedule I and Schedule J. *Id.* at 604.  Based on the court's calculation of the debtors' disposable income, which excluded any Social Security benefits, the debtors had only $23.50 of monthly disposable income available to fund their proposed Chapter 13 Plan payments of $300.00 per month. *Id.* at 604-05.  Thus, the court held that "[t]he law on this point is clear—if a debtor's monthly plan payment exceeds the debtor's disposable income, that plan is not feasible and cannot be confirmed." *Id.* at 605 (citing *In re Sully*, 223 B.R. 582, 585-86 (Bankr. M.D. Fla. 1998); *In re Wilkinson*, 99 B.R. 366 (Bankr. N.D. Ohio 1989)).  The court noted that nothing in the Bankruptcy Code precluded the court from considering Social Security income in evaluating the feasibility of a Chapter 13 Plan and denied confirmation of the debtors' proposed Plan. *Id.*  The court also opined that the debtors were not precluded from filing an amended Plan that included their Social Security income, which would result in a monthly disposable income of $292.84, and render a feasible Plan. *Id.*

Similar to the debtors in *Schanuth*, Debtor is also a below-median debtor and his projected disposable income would be determined by Schedules I and J. However, unlike in *Schanuth*, Debtor does state his Social Security income on Schedule I, but argues that such income should not be considered in calculating his

11

disposable income and evaluating Trustee's objections to Debtor's proposed Plan. Like the court in *Schanuth*, the bankruptcy court below found that if Debtor were to exclude his Social Security income from his disposable income calculation, then such income will also be excluded when considering whether Debtor's Plan is feasible.

The Debtor bears the burden of proving that his proposed Plan meets all required elements necessary for Plan confirmation under 11 U.S.C. §1325, and may not circumvent this burden imposed on all debtors simply by virtue of Debtor's application of his Social Security income to his Plan payments. Even if Debtor may exclude Social Security income from his projected disposable income calculation, he must still prove that his Chapter 13 Plan would be feasible without such income as required by 11 U.S.C. §1325(a)(6). Thus, by excluding Debtor's Social Security income from consideration of Debtor's projected disposable income, such income must also be excluded in evaluating the feasibility of Debtor's proposed Plan, rendering the Plan unfeasible.

## II.    Allowing A Debtor To Selectively Provide Social Security Income For Consideration of Only Certain Elements of 11 U.S.C. §1325 Enables Results Directly Prohibited By The Bankruptcy Code

According to Debtor, because his projected monthly disposable income is negative when Social Security income is excluded from his disposable income calculation, Debtor is not required to propose a minimum monthly Plan payment under 11 U.S.C. §1325(b)(1)(B) since Schedule J shows his projected disposable income is negative and Debtor has no disposable income to make Plan payments with.  On the other hand, Debtor argues that his Plan should still be deemed feasible as he *in fact* does have the monthly disposable income to support a Chapter 13 Plan payment.  Thus, Debtor's argument essentially advocates that by virtue of his Social Security income he is the exception to the express duties imposed upon debtors under the Bankruptcy Code, and that Debtor's situation allows him to achieve results in a Chapter 13 case that is also directly prohibited by the Bankruptcy Code.

Following the logic of Debtor's argument, a debtor could manipulate his or her Chapter 13 proceeding into a *de facto* Chapter 7 case by proposing a confirmable Chapter 13 Plan that provides payments of only $1.00 per month for 36 months while reaping the benefits of a Chapter 13 case that are not available to him in a Chapter 7 proceeding.

13

One such benefit would be the expanded discharge available to Chapter 13 debtors under 11 U.S.C. §1328 that are unavailable to Chapter 7 debtors. Chapter 13 debtors may obtain a discharge of debts for willful and malicious injury to property, debts incurred to pay non-dischargeable tax obligations, and debts resulting from property settlements in divorce or separation proceedings. The Congressional intent underlying the expanded Chapter 13 discharge is to incentivize debtors to repay their creditors under a reorganization plan rather than proceeding with Chapter 7 liquidation. H.R. Rep. No. 95-595, at 129 (1977), *reprinted in* 1978 U.S.S.C.A.N. 5963, 6090.

Another such benefit Debtor could obtain by operating his Chapter 13 case as *de facto* Chapter 7 proceeding is obtaining a "strip-off" of a junior deed of trust on his residence, which is expressly prohibited in a Chapter 7 by this Court in its decision in *Ryan v. Homecomings Financial Network*, 253 F.3d 778 (4th Cir. 2001), as such a strip-off violates 11 U.S.C. §§506(a) and (d).

Permitting a debtor to mandate when and in what manner a bankruptcy court may consider his Social Security benefits in evaluating a Chapter 13 Plan confirmation enables such a debtor forgo the requirements and restrictions imposed upon all debtors under the Bankruptcy Code, and allows him to set his own rules for his Chapter 13 proceeding.

### III. Neither The Language Nor The Public Policy Underlying Section 207 Of The Social Security Act Mandates A Wholesale Exclusion Of Social Security Benefits From Voluntary Bankruptcy Proceedings

Social Security benefits are paid to individuals who are retired, disabled, survivors of deceased workers, or those who are dependents of Social Security beneficiaries. Soc. Sec. Admin., *Social Security Understanding the Benefits*, SAA Pub. No. 05-10024, 4 (2012). Due to the public policy in support of assisting the aforementioned groups of people and the policy underlying the Social Security program itself, Section 207 of the Social Security Act provides:

> The right of any person to any future payment under this title shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this title shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

42 U.S.C. §407(a).

Therefore, an individual is generally protected from involuntarily ceding his Social Security benefits to any public or private entity that may attempt to collect such benefits in satisfaction of a debt or other obligations through the legal process.[2] However, the Chapter 13 process is entirely

---

[2] Appellant argues that the voluntary nature of the present Chapter 13 bankruptcy petition cannot be construed as a waiver of the protections provided under 42 U.S.C. §407(a), and in support cites the Supreme Court's decision in *Philpott v. Essex County Welfare Board*, 409 U.S. 413 (1973), which held that Social Security

voluntary and provides immense benefits and protections to a debtor seeking

financial relief and a fresh start. A debtor need only repay his creditors to

the best of his abilities for a set period of time in exchange for an expanded

discharge, which is not available in a Chapter 7 proceeding, on the

remaining balance of his debts. In some cases, the feasibility of a debtor's

Chapter 13 plan necessitates contribution of his Social Security benefits

toward his monthly plan payment. The use of Social Security benefits in

funding a voluntary Chapter 13 repayment plan does not run afoul to the

language in Section 207 of the Social Security Act because the statute

prohibits "a third party's compelled acquisition through legal process of

someone else's Social Security benefits." *Mains v. Foley*, 2012 WL 612006

at *5 (W.D. Mich. Feb. 24, 2012). A debtor's use of his Social Security

benefits to fund a Chapter 13 plan is "no different in principle than a Social

Security beneficiary's decision to use his or her benefits to purchase

anything of value that the beneficiary desires. No one would suggest that

such a beneficiary has immunity from paying the restaurant bill he or she

---

beneficiaries who voluntarily participate in state-sponsored welfare programs
could not be treated as having waived their rights under 42 U.S.C. §407(a).
However, the Court's decision in *Philpott* was expressly superseded by Congress
in 1974 when it enacted 42 U.S.C. §1383(g) as discussed in *Rodriguez v. Perales*,
86 N.Y.2d 361, 365 (1995). Thus, the general protections set forth under 42
U.S.C. §407(a) are not absolute and are subject to exceptions.

16

incurred just because the cash to pay came from Social Security benefits."
*Id.*

Social Security retirement benefits are not meant to be a beneficiary's critical or sole source of income, but instead are meant to augment a retiree's pension, savings, and investment incomes. *Understanding the Benefits*, at 4 ("Social Security was never meant to be the only source of income for people when they retire.... Social Security replaces about 40 percent of an average wage earner's income after retiring...."). Indeed, Social Security benefits are not Debtor's sole source of income as he and his spouse both earn wages through their regular employment.

Thus, the prohibition against subjecting Social Security benefits to any operation of bankruptcy law under Section 207 cannot be construed in the same manner, for example, in a situation where a debtor who was forced into an involuntary Chapter 7 proceeding and his Social Security disability benefits were being seized by the trustee for the benefit of his creditors, and in situation such as the present case, where a debtor voluntarily avails himself to a Chapter 13 proceeding in order to retain his home and partially repay his creditors by using Social Security retirement benefits in exchange for a discharge on the remaining balance of his unsecured debts.

In the present case, Debtor's Social Security benefits are meant to supplement his retirement income, allowing him to have a more comfortable retirement. Indeed, but for the classification of Debtor's Social Security benefits as such, his gross monthly income falls above the state median income level. Further, Debtor voluntarily initiated this Chapter 13 proceeding, presumably because he desired to retain his home that has equity in it. Thus, in order for Debtor to retain the benefits of his Chapter 13 case he must repay his creditors to the best of his abilities for the duration of his Chapter 13 Plan.

Nothing under the Social Security Act nor the Bankruptcy Code exempts Debtor from satisfying this element that is required of all Chapter 13 debtors. Most importantly, Debtor is not compelled to remain in his Chapter 13 case, and therefore his Social Security benefits are not being forcefully acquired by a third party for the purposes of satisfying his debts.

### A.     In Determining A Below-Median Income Debtor's Disposable Income, Schedules I And J Control, Which Expressly Includes Social Security Benefits

In the case of an above median debtor, a debtor's disposable income is his "current monthly income" less specified expenses as determined by the means test under 11 U.S.C. §1325(b)(3). *Hamilton v. Lanning*, 130 S.Ct. 2464, 2470 (2010).

Thus, since "current monthly income" is defined by 11 U.S.C. §101(10A) to specifically exclude Social Security benefits, such benefits may not be accounted for when determining an above median debtor's disposable income and in turn his minimum monthly Chapter 13 plan payment. *Baud v. Carroll*, 634 F.3d 327, 345 (6th Cir. 2011).

On the other hand, the "current monthly income" determination under 11 U.S.C. §1325(b)(3) is not applicable to below median debtors.  Instead, a below median debtor must contribute all of his "projected disposable income" toward his Chapter 13 plan payment under 11 U.S.C. §1325(b)(1)(B), which is determined by a debtor's *actual* income and reasonable expenses on Schedules I and J. *Hamilton v. Lanning*, 130 S.Ct. 2464, 2473-74 (2010); *see In re Herrmann*, 2011 WL 576753, C/A No. 10-06523-JW, at *5 (Bankr. D.S.C. Feb. 9, 2011) (citing *In re Edmunds*, 350 B.R. 636, 646 (Bankr. D.S.C. 2006) ("'Projected disposable income under §1325(b)(1)(B) is determined in this District by using a forward looking approach where the Court looks at the amount of actual income expected to be received in the applicable commitment period without restriction by the definition of current monthly income or disposable income."); *see also In re Nicolas*, 458 B.R. 516, 519-20 (Bankr. E.D. Ark. 2011).  The official Schedule I expressly provides for inclusion of Social Security benefits in calculating a debtor's monthly

19

income on Line 11, and "shall be construed to be consistent with these rules and the Code." Fed. R. Bankr. P. 9009.

Since Congress did not define the term "projected disposable income" within the Bankruptcy Code, courts shall apply the term's ordinary meaning when interpreting its usage within a statute. *Lanning*, 130 S.Ct. at 2471-72 ("While a projection takes past events into account, adjustments are often made based on other factors that may affect the final outcome."). Further, the established pre-BAPCPA bankruptcy practice was for courts to consider any known or virtually certain changes in a debtor's income or expenses when determining disposable income. *Id.* at 2473-74. Additionally, pre-BAPCPA bankruptcy practices also included counting Social Security benefits when determining a debtor's projected disposable income. *In re Nicholas*, 458 B.R. 516, 519-20 (Bankr. E.D. Ark. 2011). Thus, as the Supreme Court reiterated in *Lanning*, "Pre-BAPCPA bankruptcy practice is telling because we "'will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure.'"" *Lanning*, 130 S.Ct. at 2473 (*quoting Travelers Casualty & Surety Co. of Am. v. Pacific Gas & Elec. Co.*, 549 U.S. 443, 454 (2007)).

The inclusion of Social Security benefits in a below median debtor's "projected disposable income" is consistent with the fact that on Form B22C, used by above median debtors to determine their monthly disposable income under 11

20

U.S.C. §1325(b)(3) specifically instructs the *exclusion* of Social Security benefits from being calculated on Lines 8 and 9 as income from other sources.  Conversely, Schedule I which is controlling for below median debtors, expressly requires inclusion of "Social Security or other government assistance" on Line 11, but neither Schedule I nor J provides the option for debtors to exclude such income from the final calculation of their monthly net income available for their Chapter 13 plan payments.  As such, the construction of the Official Forms provided by the Judicial Conference of the United States is evidence that Congress intended for the inclusion of Social Security benefits in determining a below median debtor's disposable income.

If consideration of Social Security benefits were never permitted in confirming a Chapter 13 plan, then debtors would have the "discretion to dictate the amount of future disposable income they want to contribute to a plan," which would be entirely contrary to Congress's attempt to eradicate bankruptcy abuse under BAPCPA. *Nicholas*, 458 B.R. at 520 (*quoting In re Cranmer*, 433 B.R. 391, 399 (Bankr. D. Utah 2010).  Thus, Social Security benefits are properly included in determining a below median income debtor's monthly projected disposable income available for Chapter 13 plan payments.

In the present case, Debtor is attempting to achieve what the court in *Nicholas* warned.  Debtor argues that he is not required to propose a minimum

21

monthly payment in his Chapter 13 plan since excluding his Social Security benefits would result in a negative net monthly income figure.  Therefore, Debtor asserts that he is free to contribute as much or as little toward repaying his creditors while still obtaining the same benefits provided under a Chapter 13 proceeding. According to Debtor's theory, any Chapter 13 debtor who receives any form of Social Security benefits would not be held accountable to his or her actual ability to repay their creditors, and could dictate the amount of their monthly plan payments.  On the contrary, the fundamental principles of the Bankruptcy Code require Debtor to sincerely repay his creditors to the best of his abilities.  As such, Debtor's Social Security benefits must be included when determining his projected disposable income.

**B.    Social Security Benefits Are Not Included In Current Monthly Income Calculations So As Not To Prejudice Debtors When Applying The Chapter 7 Or Chapter 13 Means Test Analysis, But Exclusion Of Such Does Not Negate A Debtor's Actual Ability To Repay Creditors**

Some of the most significant provisions Congress enacted through BAPCPA were the changes to the requirements that determined a debtor's eligibility in seeking the benefits and protections under a Chapter 7 or Chapter 13 bankruptcy proceeding.  Such changes were meant to prevent debtors from abusing the bankruptcy process by making it more difficult for debtors to file for Chapter 7

22

bankruptcy and discharge their debt.  Congress implemented the "means test" analysis as a mechanism to prevent debtors from abusing the bankruptcy process.

In a Chapter 7 proceeding, if a debtor's current monthly income is greater than the state median then a means test analysis will determine whether the Chapter 7 filing is presumptively abusive under 11 U.S.C. §707(b).  A debtor may rebut the presumption of abuse by demonstrating special circumstances under 11 U.S.C. §707(b)(2), but should he fail to do so, his case will either be converted to a Chapter 13 proceeding or be dismissed. 11 U.S.C. §707(b)(1).

In a Chapter 13 proceeding, the means test analysis first dictates whether a the applicable commitment period of a debtor's Chapter 13 plan under 11 U.S.C. §1325(b)(4) will be three years for below median income debtors, or five years for above median income debtors.  If a debtor is above median, the Chapter 13 means test then determines the debtor's disposable income under 11 U.S.C. §1325(b)(3).

The starting point for both the Chapter 7 and Chapter 13 means test is a debtor's "current monthly income,"  which does not include Social Security benefits as specified under 11 U.S.C. §101(10A).  The effect of excluding Social Security benefits precludes a debtor from being unfairly prejudiced under the means test for receiving benefits income that social policy has already determined that he receive for the support of his basic welfare.  For example, this approach makes most sense where a joint debtor in a Chapter 7 proceeding receives Social

23

Security disability income and the inclusion of these benefits under the means test could produce a presumption of abuse, possibly resulting in conversion or dismissal of the bankruptcy case.  Therefore, the exclusion of Social Security benefits in calculating a debtor's current monthly income ensures that debtors receiving Social Security benefits will not be faced with unnecessary hurdles to overcome in seeking financial relief and protection provided by the bankruptcy process.

However, the exclusion of Social Security benefits from the definition of "current monthly income" and the means test analysis does not negate a debtor's obligation to contribute all of his projected disposable income toward his Chapter 13 plan payments as required by 11 U.S.C. §1325(b)(1)(B).  Congress did not mandate anywhere in the Bankruptcy Code that by excluding Social Security benefits from the definition of "current monthly income" it also intended to ignore a debtor's actual ability to repay his creditors, thus defeating the entire purpose of a Chapter 13 proceeding in cases where a debtor receives Social Security benefits. Such an interpretation would lead to absurd results that would enable the type of bankruptcy abuse that BAPCPA was designed to eradicate.  Additionally, notwithstanding the exclusion of Social Security benefits under the means test analysis, a Chapter 13 plan must also meet the requirements necessary to

confirmation as set forth under 11 U.S.C. §1325(a), all of which are independent from one another.

Accordingly, in the present case, Debtor may properly exclude all Social Security benefits he and his family receives for purposes of applying the means test, but such income must still be included in determining his ability to repay his creditors and evaluated in conjunction with his proposed Chapter 13 plan payments. As such, Debtor's actual ability to repay his creditors is much greater than his disposable income reported on his means test. Indeed, Debtor has the ability to repay his creditors in full, but argues that he should not be required to due to the fact that he receives Social Security benefits. The exclusion of Social Security benefits from the means test calculation does not also relieve Debtor from proposing a Chapter 13 Plan in good faith with the genuine intent to repay his creditors.

## CONCLUSION

In the interest of preventing a means for exploiting the bankruptcy process and in the interest of preserving the standards by which all debtors are equally held to under the Bankruptcy Code, Trustee respectfully asks this Court to affirm the decisions of the district court and the bankruptcy court below, and find that a debtor may not compel a bankruptcy court to selectively consider Social Security income for only some elements required for Plan confirmation under 11 U.S.C. §1325.

Dated: November 16, 2012                         __/s/ Eva Choi_____
                                                  Eva Choi (VSB# 81974)
                                                  OFFICE OF THE CHAPTER 13 TRUSTEE
                                                  300 N. Washington Street, Suite 400
                                                  Alexandria, VA 22314
                                                  Phone: (703) 836-2226
                                                  Fax: (703) 836-8120
                                                  E-mail: echoi@chapter13alexva.com

                                                  *Counsel for Appellee*

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**No.** 12-2017          **Caption:** Robert Ranta v. Thomas P. Gorman

## CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

   This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

   [✓]   this brief contains _____5,692_____ [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

   [ ]   this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   [✓]   this brief has been prepared in a proportionally spaced typeface using
   Microsoft Word _____ [*identify word processing program*] in
   14-point Times New Roman _____ [*identify font size and type style*]; **or**

   [ ]   this brief has been prepared in a monospaced typeface using
   _____ [*identify word processing program*] in
   _____ [*identify font size and type style*].

(s) Eva Choi _____

Attorney for Appellee _____

Dated: 11/16/12 _____

# CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of November, 2012, the foregoing Brief of the Appellee was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Daniel M. Press, Esq.
Counsel for Appellant
CHUNG & PRESS, P.C.
6718 Whittier Avenue, Ste. 200
McLean, Virginia 22101

Patricia S. Connor, Clerk
U.S. Court of Appeals for the Fourth Circuit
1100 East Main Street, Suite 501
Richmond, Virginia, 23219-3517
(8 copies, via Federal Express)

__/s/ Eva Choi_____
Eva Choi (VSB# 81974)
OFFICE OF THE CHAPTER 13 TRUSTEE
300 N. Washington Street, Suite 400
Alexandria, VA 22314
Phone: (703) 836-2226
Fax: (703) 836-8120
E-mail: echoi@chapter13alexva.com

*Counsel for Appellee*
